UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

              Plaintiff,

ROBERT SANDERS,

              Intervenor-Plaintiff,

      v.

BIG FIVE CORP.,

              Defendant.

Case No. C17-1098RSM

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO DISMISS AND TO COMPEL
PRODUCTION OF RECORDS

## I.    INTRODUCTION

This matter comes before the Court on Defendant's Motion to Dismiss Plaintiff-Intervenor's Emotional Distress Claims and to Compel Production of 2012 Medical Admission Records. Dkt. #41. Defendant, Big 5 Corp. ("Big 5"), argues that Plaintiff-Intervenor, Robert Sanders, has alleged more than garden variety emotional distress, but has refused to produce any requested medical records. As a result, Big 5 asserts that the emotional distress request for damages must be dismissed. *Id.* In addition, Big 5 argues that it is entitled to Mr. Sanders's records from an involuntary mental health hospitalization in 2012 to support its after-acquired evidence defense. *Id.* Mr. Sanders opposes the motion, arguing that the records sought are irrelevant, his medical conditions are not at issue in this matter, and his mental health records are

ORDER
PAGE - 1

not discoverable. Dkt. #44. For the reasons discussed below, the Court GRANTS IN PART and DENIES IN PART Defendant's motion.

## II.    BACKGROUND

This discrimination lawsuit was initially brought by the Equal Employment Opportunity Commission ("EEOC"). Dkt. #1. Robert Sanders later intervened as an additional Plaintiff. Dkt. #10. The instant motion concerns Mr. Sanders only.

Mr. Sanders alleges as follows:

15.    Defendant operates numerous retail stores throughout the state of Washington, including a store in Oak Harbor, Washington.

16.    Plaintiff-Intervenor Sanders is of African-American descent, was employed by Defendant, and primarily assigned to Defendant's Oak Harbor retail store.

17.    From approximately May 2014, Defendant engaged in unlawful employment practices at its store in Oak Harbor, in violation of Sections 703(a) and 704(a) of Title VII, 42 U.S.C. § §2000e-2(a) and 2000e-3(a). Defendant subjected Plaintiff-Intervenor Sanders to a hostile work environment based on his race. Defendant further engaged in unlawful employment practices by retaliating against Plaintiff-Intervenor Sanders for opposing the hostile work environment.

18. The practices complained of in the paragraph next above include, but are not limited to, Defendant's Store Manager subjecting Mr. Sanders to frequent, offensive, and unwelcome race-based conduct. The Store Manager referred to Plaintiff-Intervenor as "boy," and "Shadow"; introduced Plaintiff-Intervenor as "Shadow," rather than by his name, to co-workers and customers on his first day of work; and while patting her knee, whistled to Plaintiff-Intervenor, calling "Here, Shadow" while a co-worker watched and laughed.    Co-workers and lower level managers also called Plaintiff-Intervenor racially charged names including "King Kong," "boy" and "spook," commented on his dark skin color and white teeth, and said he had "the face of a janitor'" because he was African-American. Another worker told him that nationalities not originating in America should go back where they came from and criticized Black people that act Black.

19.    During his employment, Defendant's assistant managers held up box cutters to Plaintiff-Intervenor in a threatening manner, threatened to kill Plaintiff-Intervenor for calling in sick and reinforced the threat by saying "we

ORDER
PAGE - 2

will hang you" and "seriously lynch you." Defendant's assistant managers asked Plaintiff-Intervenor if he was ready to commit suicide, and offered assistance. A Management Trainee told Plaintiff-Intervenor that his "kind" wasn't allowed in the stock room of the store and told him he would die at Big 5 and end up in a river, dead.

20. Plaintiff-Intervenor attempted to rebuff the managers' and his coworkers' offensive, threatening and unwelcome comments, and complained about the harassing conduct to the Defendant's District Supervisor. The Defendant failed to take prompt or appropriate corrective action to prevent or remedy the hostile work environment caused by the supervisors' and co-workers' offensive, threatening and unwelcome conduct.

21. In retaliation for Plaintiff-Intervenor's complaints about the racially hostile work environment, Defendant, through the actions of the Defendant's District Supervisor, Store Manager and Assistant Managers, denied Plaintiff-Intervenor his work breaks, assigned Plaintiff-Intervenor more difficult and less desirable work, and continued to refer to him as "shadow," "spook," "King Kong" and "boy" when addressing him directly and in front of other employees. Defendant also disciplined Plaintiff-Intervenor unjustly.

22. The effect of Defendant's practices complained of above has been to deprive Plaintiff-Intervenor of equal employment opportunities and otherwise adversely affect his status as an employee.

23. The unlawful employment practices complained of above were intentional.

24. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiff-Intervenor.

Dkt. #12 at ¶¶ 15-24. As a result, Mr. Sanders alleges claims for: 1) Hostile Work Environment in Violation of Title VII of the Civil Rights Act; 2) Race Discrimination in Violation of Title VII of the Civil Rights Act; 3) Hostile Work Environment in Violation of the Washington Law Against Discrimination; 4) Race Discrimination in Violation of the Washington Law Against Discrimination; 5) Race Harassment/Hostile Work Environment in Violation of 42 U.S.C. Section 1981; 6) Retaliation in Violation of 42 U.S.C. Section 1981; 7) Retaliation on Violation of the Washington Law Against Discrimination; and 8) Wrongful Discharge in Violation of

Public Policy  Dkt. #12 at ¶¶ 25-69.  Mr. Sanders seeks damages for emotional distress, as well as back and future wages, amongst other damages.  Dkt. #12 at VIII.3. and VIII.4.

Discovery has been proceeding in this case, with a discovery deadline of September 10, 2018.  Dkt. #35.  Through the discovery process, Big 5 has learned that Mr. Sanders is seeking $60,311 in back pay, plus lost benefits, $74,620 in front pay, and $1 million in compensatory damages for emotional distress.  Dkt. #43, Ex. D at 19-20.  In addition, Mr. Sanders testified at his deposition that, as a result of the treatment he allegedly endured while employed with Big 5, he suffered "garden-variety" emotional distress, including anxiety, throwing up, nausea, diarrhea, sleep loss, depression, low self-esteem, withdrawal, discouragement, and irritability.  Dkt. #43, Ex. A at 134:12-135:10.  Mr. Sanders has represented to Big 5 that he will not assert he is suffering from any specific psychiatric disorder, or that he has severe emotional distress requiring extensive treatment, or that his employer exacerbated any specific psychiatric/psychological/medical condition, and that he will not rely on any medical or mental health expert testimony to support his claim for emotional distress damages at trial.  Dkts. #43, Ex. E and #44 at 7.  As a result, Mr. Sanders has declined to produce any medical records requested in discovery in this matter.  Dkt. #43, Exs. E and F.  Counsel conferred about Mr. Sanders's medical records on April 6, 2018.  Dkt. #43 at ¶ 7 and Ex. F.  The instant motion followed.

### III.    DISCUSSION

#### A. Defendant's Request to Dismiss Emotional Distress Damages

Big 5 first asks the Court to strike Mr. Sanders' claim for emotional distress damages, arguing that his medical records are relevant to the claim, but he refuses to produce them.  Dkt. #41.  Mr. Sanders responds that the records sought are overbroad and irrelevant, and are protected

ORDER
PAGE - 4

by privilege in any event. Dkt. #44. Thus, in order to resolve Big 5's motion, the Court must first determine whether the medical records sought are relevant, then, whether they are privileged, and then whether any privilege has been waived.

There appear to be two types of records at issue on this motion: medical and psychological/psychiatric. Dkt. #43, Ex. B at 25 and Ex. C at 15. To the extent any medical records involve physical conditions tied to his emotional distress/mental health, they are considered psychological or psychiatric records for purposes of this motion. All other medical records are "pure" medical records. With respect to any "pure" medical records, the Court agrees with Plaintiff that because he has not requested damages for any physical injury, and the physical symptoms he has noted in discovery are those he alleges manifested from his emotional distress, any "pure" medical records are irrelevant and not subject to discovery.

However, this Court finds that Plaintiff's health records documenting the symptoms he alleges manifested from his emotional distress are relevant. Records from the medical providers identified by Mr. Sanders through discovery are relevant in determining, among other things, causation for (*i.e.*, whether there were other unrelated sources for Mr. Sanders' emotional distress) or the magnitude of the alleged distress. *See* Dkt. #43, Ex. C at 15-16. *Compare* Dkt. #43, Ex. A at 134:21-135:10. Under Federal Rule of Civil Procedure 26(b)(1), "[u]nless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1); *see also* Wright & Miller, Federal Practice & Procedure § 2008 (noting that, even after 2000 amendment to Rule 26(b)(1), standard "is still a very broad

ORDER
PAGE - 5

one"). Therefore, the Court must determine whether those records are protected by the psychotherapist-patient privilege, and thus exempt from discovery.

As an initial matter, the Court notes that in cases involving both state and federal claims, the federal law of privilege applies to both the state and federal claims. *Fitzgerald v. Cassil*, 216 F.R.D. 632, 634 (N.D. Cal. 2003); *see also Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 459 (N.D. Cal. 1978) (concluding that "in federal question cases where pendent state claims are raised the federal common law of privileges should govern all claims of privilege raised in the litigation," at least where information sought goes to both federal and state claims). In this case, the records in question are relevant to both the state and federal claims, as both are related to the same nucleus of operative facts. Therefore, the federal law of privilege applies.

In *Jaffee v. Redmond*, 518 U.S. 1, 135 L. Ed. 2d 337, 116 S. Ct. 1923 (1996), the Supreme Court found that, under Rule 501, there exists a psychotherapist-patient privilege under the federal common law. *See* 518 U.S. at 15. However, the Supreme Court noted that the psychotherapist-patient privilege could be waived. *See id.* at 15 fn.14. The burden of demonstrating that there has been no waiver falls on Mr. Sanders. As noted above, Mr. Sanders has represented that he has not sought or obtained psychological/psychiatric treatment for the emotional distress he alleges he suffered as a result of Big 5's conduct, he will not rely on the testimony of a treating medical provider or any other expert to establish the emotional distress, and he does not allege that the discrimination by Big 5 exacerbated any pre-existing conditions. Accordingly, the question for this Court is whether there has been a waiver of the psychotherapist-patient privilege simply because Mr. Sanders is seeking emotional distress damages as a result of what he has termed "garden-variety" emotional distress.

The courts that have addressed this issue have not reached any consensus as to the trigger and scope of any waiver. *See generally* Note, *Certainty Thwarted: Broad Waiver Versus Narrow Waiver of the Psychotherapist-Patient Privilege After* Jaffee v. Redmond, 52 Hastings L.J. 1369 (2001) (discussing various cases). On one end of the spectrum there is a broad approach, in which courts have held that a simple allegation of emotional distress in a complaint constitutes waiver. *See Fritsch v. City of Chula Vista*, 196 F.R.D. 562 (S.D. Cal. 1999). At the other end of the spectrum, under a narrow approach, courts have held that there must be an affirmative reliance on the psychotherapist-patient communications before the privilege will be deemed waived. *See Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225 (D. Mass. 1997); *Hucko v. City of Oak Forest*, 185 F.R.D. 526 (N.D. Ill. 1999). There is also a middle ground, under which courts have generally found a waiver when the plaintiff has done more than allege "garden-variety" emotional distress. Garden-variety emotional distress has been described by one court as "ordinary or commonplace emotional distress," that which is "simple or usual." In contrast, emotional distress that is not garden variety "may be complex, such as that resulting in a specific psychiatric disorder." *Ruhlmann v. Ulster County Dep't of Soc. Servs.*, 194 F.R.D. 445, 449 n.6 (N.D.N.Y. 2000).

Having reviewed the cases examining this issue, and looking at the allegations in the instant matter, this Court finds that Mr. Sanders has not waived the privilege with respect to the relevant records described above. Because he has not alleged anything more than ordinary or commonplace emotional distress, he does not intend to introduce his medical records, and he will not rely on any medical lay or expert witness testimony, he has not waived any privilege with respect to the relevant medical records. However, while the privilege may bar access to those records, Big 5 may cross-examine Mr. Sanders about other stressors or contributing factors that

ORDER
PAGE - 7

may explain or have contributed to the alleged emotional distress. Likewise, the occurrence and dates of any psychotherapy, including that which occurred before the incident, is not privileged and subject to discovery. *See Vanderbilt*, 174 F.R.D. at 230. Further, Big 5 can examine percipient witnesses or find other evidence to show that Mr. Sanders' description of his distress is exaggerated.

Because the Court finds that the medical records sought are privileged, and therefore Plaintiff is not required to produce them in discovery, the Court declines to dismiss Mr. Sanders' request for emotional distress damages on the basis that he failed to produce his medical records.

## B. After-Acquired Evidence Rule and 2012 Mental Health Records

Big 5 next argues that this Court should compel the disclosure of Mr. Sanders' records from his 2012 involuntary admission to Compass Health in Mukilteo. Dkt. #41 at 8. Specifically, Big 5 argues that if Mr. Sanders was involuntarily committed for psychiatric treatment, he would have been disqualified from selling firearms under federal and state law, and he would not have been hired by Big 5 nor would Big 5 have continued to employ him. Thus, Big 5 asserts that it is entitled to evaluate whether Mr. Sanders' 2012 hospitalization would have disqualified him from employment. Dkt. #41 at 8. Mr. Sanders responds that Big 5's request amounts to a fishing expedition, which is prohibited, and that Big 5 would have no basis to discharge Mr. Sanders for his 72-hour mental health evaluation in any event. Dkt. #44 at 9-12.

The "after-acquired evidence" doctrine precludes or limits an employee from receiving remedies for wrongful discharge if the employer later "discovers" evidence of wrongdoing that would have led to the employee's termination had the employer known of the misconduct. *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 360-63, 130 L. Ed. 2d 852, 115 S. Ct. 879 (1995). As the Ninth Circuit Court of Appeals has explained, "an employer can avoid

ORDER
PAGE - 8

backpay and other remedies by coming forward with after-acquired evidence of an employee's misconduct, but only if it can prove by a preponderance of the evidence that it would have fired the employee for that misconduct." *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 761 (9th Cir. 1996).

In response to the instant motion, Mr. Sanders admits that in 2012 he was "placed under the care of mental health professionals and involuntarily detained" after his mother called 911 out of fear for his mental health. Dkts. #44 at 3 and #44-3 at ¶ ¶ 3- 4. Mr. Sanders relies on *Rivera v. NIBCO, Inc.*, 364 F.3d 1057 (9th Cir. 2004), in support of his argument to this Court that Big 5 is not entitled to obtain his medical records for the purposes of utilizing the after-acquired evidence defense. Dkt. #44 at 9. However, that case is unpersuasive. In *Rivera*, the court found that the employer wanted to use the discovery process to uncover illegal actions, and declined to allow the employer to engage in such a fishing expedition. *Rivera*, 364 F.3d at 1071-72. Here, unlike in *Rivera*, Big 5 possesses evidence that Mr. Sanders was involuntarily detained and subsequently hospitalized due to mental health issues in 2012. The Court agrees that, depending on what his medical records reveal, Mr. Sanders' detention and hospitalization may have disqualified him from employment with Big 5. Therefore, Big 5 is entitled to review Mr. Sanders' medical records related to that hospitalization to determine whether it can employ the after-acquired evidence doctrine to limit recovery on Mr. Sanders' alleged wage damages.

## IV.    CONCLUSION

Accordingly, having reviewed Defendant's motion, Plaintiff-Intervenor's opposition thereto, and Defendant's reply in support thereof, along with the remainder of the record, the Court hereby finds and ORDERS:

ORDER
PAGE - 9

1. Defendant's Motion to Dismiss Plaintiff-Intervenor's Emotional Distress Claims and to Compel Production of 2012 Medical Admission Records (Dkt. #41) is GRANTED IN PART AND DENIED IN PART as discussed above.

   a. The Court declines to dismiss Plaintiff's request for emotional distress damages.

   b. **No later than fourteen (14) days from the date of this Order**, Mr. Sanders shall produce the records related to his 2012 hospitalization at Compass Health in Mukilteo, WA. Those records shall be marked as "Confidential" and produced subject to the parties' stipulated Protective Order in this case. Dkt. #19.

DATED this 22 day of May, 2018.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE